IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
ANTHONY CORRADETTI, et al.    :
          Plaintiffs,         :
                              :          Civil Action
     v.                       :       No. 12-998 (JBS-KMW)
                              :
SANITARY LANDFILL, INC., et   :
al.,                          :          **OPINION**
                              :
              Defendants.     :
```

APPEARANCES:

Shawn M. Latourette, Esq.
Shari M. Blecher, Esq.
Stuart J. Lieberman, Esq.
Lieberman & Blecher PC
10 Jefferson Plaza
Suite 400
Princeton, NJ 08540
     Attorneys for Plaintiffs Anthony Corradetti, Marianne
     Corradetti, Robert Corradetti, Maribeth Stuffo, and Nick
     Patti

Cathleen Marie Devlin, Esq.
Deborah L. Shuff, Esq.
Saul Ewing LLP
1500 Market St., 38th Floor
Centre Square West
Philadelphia, PA 19102
     Attorneys for Defendants Sanitary Landfill, Inc.; SC
     Holdings, Inc.; Waste Management of New Jersey, Inc.; Waste
     Management, Inc.

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

        Defendants operate a landfill that has allegedly caused

groundwater contamination and that is adjacent to property which

Plaintiffs own or at which they live or work. Before the Court is

the motion of Defendants Sanitary Landfill, Inc. and SC Holdings

Inc. ("Defendants") to dismiss, strike, and stay [Docket Item 12] different portions of Plaintiffs' Complaint [Docket Item 1-2].

For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part, their motion to strike will be granted in part and denied in part, and their motion to stay will be dismissed as moot. The Court's primary holdings are (1) Plaintiffs have not alleged intent and, therefore, their assault and battery claims will be dismissed without prejudice; (2) Plaintiffs' public nuisance claim will not be dismissed because they have sufficiently pled special damages; and (3) Plaintiffs' quality of life claim will be struck, and it will be merged into Plaintiffs' private nuisance claim as a species of damages that may be sought.

## II.  FACTUAL BACKGROUND

Plaintiffs Anthony and Marianne Corradetti are husband and wife, and they own and operate commercial property ("Corradetti Property") at 1300 Taylors Lane, Cinnaminson Township, in Burlington County. (Compl. ¶ 2.) Plaintiff Robert Corradetti is Anthony and Marianne Corradetti's son, and he has worked at the Corradetti Property full-time as a warehouse employee since 1980. (Compl. ¶ 3.) Plaintiff Maribeth Stuffo is Anthony and Marianne Corradetti's daughter. (Compl. ¶ 4.) She worked at the Corradetti Property from 1974 to 1989 in sales and management and, since

August 2008, she has been a tenant at the Corradetti Property. (Compl. ¶ 4.) Nick Patti is an independent contractor who has worked at the Corradetti Property since October 2009. (Compl. ¶ 5.)

Defendants own and operate one or more landfills within the Cinnaminson Groundwater Contamination Superfund Site ("Superfund Site"), which borders Taylors Lane and is adjacent to the Corradetti Property. (Compl. ¶ 11.) The Cinnaminson Site consists of hundreds of acres of residential to heavy industrial property. (Compl. ¶ 13.) Large amounts of waste materials were landfilled at the Superfund Site, including municipal solid waste, agricultural waste, industrial waste, and hazardous waste. (Compl. ¶ 14.) Operation of the landfill caused groundwater contamination at the Superfund Site, and the groundwater contamination then migrated onto the Corradetti Property. (Compl. ¶ 15.) The contaminants in the groundwater include, inter alia, arsenic, manganese, and volatile organic compounds, such as chloroform and benzene. (Compl. ¶ 16.)

The Superfund Site is being treated over a long period of time by a groundwater pump-and-treat remediation system, but the contamination remains. (Compl. ¶ 17.) Plaintiffs allege that Defendants failed to promptly control the contamination sources, failed to promptly begin remediation, and failed to survey neighboring properties for contamination. (Compl. ¶ 76.) In

3

addition, Plaintiffs allege that the remediation that Defendants did conduct was "woefully inadequate and designed to save costs as opposed to protect against the risks to human health and the environment. . . ." (Compl. ¶ 77.)

Environmental testing has detected the presence of contaminants in the subslab soil beneath the Corradetti Property and in the indoor air within a building located on the Corradetti Property. (Compl. ¶ 21.)

Plaintiffs allege, essentially, that Defendants permitted contaminated groundwater to migrate onto the Corradetti Property and then allowed the contaminated groundwater to rise, in a gas phase, to the surface and enter the indoor air of buildings on the Corradetti Property. (Compl. ¶ 1.) Plaintiffs allege that breathing contaminated air has caused serious risks of adverse health effects. (Compl. ¶ 1.)

Plaintiffs allege that Defendants understood the risks to health and property that unsafe landfill operations can cause. (Compl. ¶ 28.) Plaintiffs also allege that Defendants were aware that their contaminated groundwater migrated onto the Corradetti Property and that Defendants failed to stop or mitigate the contamination. (Compl. ¶ 23.) Plaintiffs fear that they will become injured by contaminants in the air and, as a result, they cannot use their property or conduct their business as they normally would. (Compl. ¶¶ 24-25.) The contamination has harmed

Plaintiffs' quality of life, caused them to fear future illness, and diminished their Property value. (Compl. ¶¶ 25-26.)

Plaintiffs have ten claims: (1) negligence, (1) assault and battery, (3) negligent infliction of emotional distress and fear of future injury, (4) quality of life damage, (5) private nuisance, (6) public nuisance, (7) trespass, (8) negligent site remediation, (9) violation of the New Jersey Spill Compensation and Control Act, and (10) violation of the New Jersey Water Pollution Control Act.

Plaintiffs seek multiple forms of relief including, <u>inter alia</u>, a declaration that Defendants have violated the laws listed in each count, medical surveillance for each Plaintiff that has been exposed to contaminants, preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination, and compensatory damages.

**III.** JURISDICTION

Plaintiff filed this action in the Law Division of New Jersey Superior Court, Burlington County. Defendants removed the action to this Court. All of the Plaintiffs are citizens of New Jersey.  Defendant SC Holdings is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business in Pennsylvania. (Notice of Removal ¶ 5.) Defendant Sanitary Landfill merged into SC Holdings and ceased to exist in

1993. No Defendant is presently a citizen of New Jersey,[1] and the relief that Plaintiffs seek exceeds $75,000. The Court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]

   **IV.**   DEFENDANTS' MOTION TO DISMISS, STRIKE, AND STAY

   Defendants' filed a motion to dismiss, strike, and stay [Docket Item 12]. Specifically, Defendants seek to dismiss Count 2, which alleges civil assault and battery; Count 4, which alleges quality of life damage; Count 6, which alleges public nuisance; Count 9, which alleges violation of the Spill Compensation and Control Act; and Count 10, which alleges violation of the Water Pollution Control Act. Defendants argue that Plaintiffs failed to plead essential elements for all of these claims.

_____

[1] In their Notice of Removal [Docket Item 1], Defendants noted that Plaintiffs' Complaint inaccurately states that several Defendants are citizens of New Jersey. Defendants substantiated their citizenship assertions. [Docket Items 1-3 & 1-4.] Plaintiffs have not contested Defendant's removal or the underlying assertions of citizenship.

[2] When Plaintiffs originally filed the Complaint, there were two other Defendants: Defendant Waste Management, which is a corporation organized and existing under the laws of Delaware with its principal place of business in Texas, and Defendant Waste Management of New Jersey, Inc., which is also a corporation organized and existing under the laws of Delaware with its principal place of business in Texas. (Notice of Removal ¶¶ 6, 9.) Plaintiffs voluntarily dismissed the Complaint without prejudice as to those two Defendants [Docket Item 10] but, even if these Defendants were still joined, diversity jurisdiction would be proper.

In addition, Defendants ask the Court to strike Count 8, which alleges negligent site remediation, and Count 4, which alleges quality of life damage. Defendants argue that Counts 8 and 4 are duplicative of and subsumed within Plaintiffs' negligence and private nuisance claims, respectively, and cannot stand as separate counts.

Finally, Defendants request a stay to respond to the balance of the Complaint until the Court has decided the motions to dismiss and strike.

**V.**   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff has failed to set forth fair notice of the claim and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that

offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

Additionally, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). The Court is aware that the Complaint in this case was filed in state court and Defendants removed it to federal court, which has different pleading standards: "If a pleading in a removed case falls short of the 12(b)(6) standard, it is important for the Court to exercise its discretion in favor of permitting Plaintiffs to attempt an amended pleading. . . ." Crozier v. Johnson & Johnson Consumer Companies, Inc., --- F. Supp. 2d ---, 2012 WL 4507381, *5 (D.N.J. Sept. 28, 2012) (Simandle J.).

**VI.** ANALYSIS: MOTION TO DISMISS

In this section, the Court analyzes Defendants' motion to dismiss Count 2, which alleges civil assault and battery; Count 4, which alleges quality of life damage; Count 6, which alleges public nuisance; Count 9, which alleges violation of the Spill Compensation and Control Act; and Count 10, which alleges violation of the New Jersey Water Pollution Control Act. For the reasons explained below, Counts 2, 9, and 10 will be dismissed

without prejudice; Defendants' motion to dismiss Counts 4 and 6 will be denied.

### a. Count 2: Assault and Battery

Defendants argue that Count 2, which alleges assault and battery, must be dismissed because Plaintiffs have not pled that Defendants intended to contaminate the Corradetti Property. Defendants state, "Passive migration of contamination . . . does *not* constitute an intentional act." (Def. Mot. Dismiss at 13.)

Both assault and battery are intentional torts and case law supports Defendants' argument. "Common-law battery is an intentional tort involving the harmful or offensive touching of plaintiff's person without his consent." Caldwell v. KFC Corp., 958 F. Supp. 962, 970 (D.N.J. 1997). Common law assault occurs when a defendant "intends only to cause apprehension" that battery is imminent. Kelly v. County of Monmouth, 380 N.J. Super. 552, 559 (App. Div. 2005).

In their Opposition [Docket Item 13], Plaintiffs argued that intent is unnecessary in an environmental contamination case. They argue that "the level of intent required in a case such as this may be satisfied by the discharging of Contaminants into the environment and failing to remediate such Contaminants." (Pl. Opp'n at 8.) In support of this proposition, Plaintiffs cite Smith v. Honeywell Int'l, Inc., 2:10-CV-03345 SDW, 2011 WL 810065 (D.N.J. Feb. 28, 2011), reconsideration denied, 2:10-CV-03345

SDW, 2011 WL 1870598 (D.N.J. May 13, 2011), an unpublished
District of New Jersey case in which the court declined to
dismiss a battery claim stemming from environmental pollution.
The Honeywell court held that the plaintiffs pled enough
information to put the defendants on notice of the battery claims
because the plaintiffs "claim[ed] that 'by intentionally
generating, discharging, transporting, disposing, failing to
properly remediate or allowing the discharge of hazardous and
toxic substances,' Defendants caused an offensive contact. . . ."
Id. at *4. Honeywell does not support Plaintiffs' argument that
intent is unnecessary for a battery claim in an environmental
pollution context; the Honeywell plaintiffs specifically pled
that defendants acted "intentionally."

        Plaintiffs also argued that Defendants' actions constituted
assault and battery because Defendants "were aware of the
migration of their contamination," "failed to inform the
plaintiffs," and, as a result, Plaintiffs "breathed indoor air
laden with Defendants' Contaminants." (Pl. Opp'n at 10.)  At this
procedural posture, the Court accepts these facts as true, but
these facts amount to a negligence claim, not an intentional
tort.

        In short, Plaintiffs have not pled that Defendants had the
requisite intent to create an offensive contact or apprehension
of an offensive contact and have not cited persuasive authority

to show that such intent is unnecessary. Count 2 will be dismissed without prejudice, and Plaintiffs may seek leave to amend to cure this pleading defect if Plaintiffs are able to plead a plausible basis for the requisite intent.

### b. Count 4: Quality of Life Damage

Defendants argue that Count 4, which alleges quality of life damage, fails because quality of life damage is not an independent tort, but rather a form of damages in a private nuisance claim. As explained below, the Court agrees; the Court will strike Plaintiffs' quality of life claim and merge Plaintiffs' pleadings for quality of life damages into Plaintiffs' private nuisance claim, which is Count 5. The Court finds that striking the claim and merging it with Count 5 is the appropriate remedy, as opposed to dismissing the claim altogether and potentially precluding Plaintiffs from seeking that form of relief. Defendants' motion to dismiss Count 4 will be denied.

### c. Count 6: Public Nuisance

Plaintiffs' Count 6 alleges public nuisance, specifically that Defendants' pollution of the groundwater constitutes a public nuisance and an unreasonable interference with the public's right to clean groundwater. Under New Jersey law, a public nuisance consists of an unreasonable interference with the exercise of a right common to the general public. Mayor & Council of Borough of Alpine v. Brewster, 7 N.J. 42, 50 (1951). A

plaintiff has standing to assert a claim of public nuisance only if it has suffered "special injury." Mayor & Council of Borough of Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1056 (D.N.J. 1993). Defendants argue that Plaintiffs' public nuisance claim must be dismissed because Plaintiffs (i) lack standing to enforce the public's right to clean groundwater, (ii) have not alleged a harm of a kind different from that suffered by other members of the public, and (iii) lack the standing or authority to seek injunctive relief for a public nuisance. The Court shall address each of these arguments in turn.

### i.   Plaintiffs Satisfy Public Nuisance Standing Requirements

Defendants argue that Plaintiffs lack standing to bring a groundwater contamination claim. They state, "Since groundwater is a natural resource held in trust by the State, . . . the [New Jersey Department of Environmental Protection ("NJDEP")] Commissioner has sole standing to bring a claim for damage to groundwater." (Def. Mot. Dismiss at 11.) Defendants argue that "Plaintiffs cannot seek to recover damages to natural resources, groundwater, under any legal theory." (Def. Mot. Dismiss at 12.)

Defendants cite New Jersey Dept. of Envtl. Prot. v. Exxon Mobil Corp., 393 N.J. Super. 388, 391 (App. Div. 2007), for the proposition that the NJDEP Commissioner is the designated trustee charged with the duty of administering and protecting the State's

natural resources. The <u>Exxon Mobil</u> court held that an entity could be liable under the New Jersey Spill Compensation and Control Act ("Spill Act") for damages for the loss of use of natural resources, in addition to clean up and removal costs. The case did not involve private citizens, standing, or public nuisance law. It simply does not hold that a private citizen cannot pursue a public nuisance claim for groundwater pollution. The NJDEP Commissioner may well be the trustee charged with protecting New Jersey's public resources, but that role does not preclude private citizens from seeking relief under common law torts.[3]

Absent any legal authority supporting Defendants' argument, the Court cannot find that only the NJDEP commissioner has standing to bring a public nuisance claim for groundwater damage.

**ii.**   Plaintiffs Have Alleged Special Injury

Defendants also argue that Plaintiffs "did not allege any special injury separate from any alleged public injury" and are

---

[3] In addition, Plaintiffs cited a case that upholds a private nuisance claim. In <u>Mayor & Council of Borough of Rockaway v. Klockner & Klockner</u>, 811 F. Supp. 1039 (D.N.J. 1993), the court upheld a public nuisance claim on behalf of a private entity alleging groundwater contamination because the entity alleged special injury and alleged that it "sustained harm in the exercise of a right common to the general public. . . ." <u>Id.</u> at 1057.

thus prohibited from seeking compensatory damages for public nuisance. (Def. Mot. Dismiss at 11.) To meet the "special injury" requirement, the plaintiff "must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference." Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 315 (3d Cir.) (quoting Restatement, § 821C(1)), cert. denied, 474 U.S. 980 (1985). Plaintiffs allege that they experienced special injuries because the Defendants' pollution has contaminated their drinking water and migrated onto their property. (Compl. ¶ 65.) These injuries satisfy the special injury requirement, as they are separate from the general injury of contaminated groundwater that the public has endured. See Rockaway at 1057 ("Because [plaintiff] alleged interference specifically with that portion of the aquifer located beneath its property, it has alleged an injury different from that suffered by the public in general.")

Defendants argue that Rockaway stands only for the proposition that if a party uses groundwater for its business operations and suffers business losses due to contaminated groundwater, then special injury is sufficiently alleged. (Def. Reply at 5.) Rockaway does note that the plaintiff suffered commercial losses, but it does not restrict the special injury definition to commercial use of groundwater. In addition, the New

Jersey Supreme Court discussed the elements of a public nuisance claim in In re Lead Paint Litig., 191 N.J. 405, 429 (2007), and did not restrict the special injury definition to the commercial context; it noted only that "a private plaintiff can sue for damages caused by the public nuisance only if the private plaintiff has suffered harm of a kind different from that suffered by other members of the public." Id. at 427. Defendants have not cited any case law restricting the special injury requirement to commercial use.

### iii. Plaintiffs Have Authority to Seek Injunctive Relief for Public Nuisance

Finally, Defendants argue that "Plaintiffs cannot seek injunctive relief for an alleged public nuisance because Plaintiffs did not plead that they have the right to recovery [sic] compensatory damages. . . ." (Def. Mot. Dismiss at 12.) It is certainly true that a plaintiff who lacks the right to damages cannot seek an injunction, but "if a private plaintiff has a right to sue for damages because of a harm different in kind, then that party may also pursue an action to abate the nuisance as it affects all members of the public." In re Lead Paint at 428. As explained above, by alleging contamination of their drinking water and their property, Plaintiffs have alleged harms that are different in kind and thus satisfy the special injury

requirement. Plaintiffs therefore also have the right to seek
damages and injunctive relief.

Defendants' motion to dismiss Count 6, which alleges public
nuisance, will be denied.

### d. Counts 9 and 10: violation of the Spill Act and the Water Pollution Control Act.

Defendants argue that Count 9, which alleges violation of
the Spill Act, should be dismissed because the Spill Act only
permits recovery of cleanup and removal costs and Plaintiffs
cannot seek injunctive relief before providing notice to relevant
public agencies. In addition, Defendants argue that Count 10
should be dismissed because the Water Pollution Control Act
("WPCA") does not provide for private citizen suits and because
Plaintiffs did not comply with Environmental Resource Act
requirements. In their Opposition, Plaintiffs concede that their
Spill Act and WPCA claims are not ripe and that dismissal without
prejudice is appropriate. Plaintiffs reserve the right to amend
their Complaint, in the future to incorporate those claims if
they become ripe. In their Reply, Defendants argue that the
dismissal should be with prejudice, not without.

The Court finds that dismissal without prejudice is
appropriate. Plaintiffs have acknowledged that they currently
lack ripe Spill Act and WPCA claims, but Plaintiffs could, in the

16

future, have cognizable claims for relief. When faced with unripe claims, the appropriate remedy is dismissal without prejudice. See e.g. Philadelphia Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge, 150 F.3d 319, 326 (3d Cir. 1998) ("The order of the district court, dismissing without prejudice plaintiffs' complaint on the ground that it did not present a controversy ripe for resolution, will be affirmed."); see also Acierno v. Mitchell, 6 F.3d 970, 977-78 (3d Cir. 1993) (Because plaintiff's "claims are not yet ripe for judicial review, . . . we will vacate the district court's judgment and remand with instructions to dismiss without prejudice.").

Defendants have asserted that the WPCA does not permit private rights of action. If there were no right to bring a WPCA claim, then dismissal with prejudice would be appropriate, regardless of the claim's ripeness. The Court declines, at this time, to conclusively determine whether the WPCA precludes private actions.[4]

Counts 9 and 10, alleging violations of the Spill Act and the WPCA respectively, will be dismissed without prejudice.

---

[4] There is unpublished case law suggesting that private WPCA claims may stand if they are connected to other claims. See e.g. Leese v. Martin, CIV. 11-5091 (NLH/AMD), 2012 WL 1224573, *4 n.7 (D.N.J. Apr. 11, 2012) ("While no private action per se exists under [the WPCA], here Plaintiffs merely assert such a violation as a predicate to their claim under the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-4.")

## VII. DEFENDANTS' MOTION TO STRIKE

Defendants ask the Court to strike Counts 4 and 8 under Fed. R. Civ. P. 12(f). They argue that Count 4, which alleges quality of life damages, is duplicative of Plaintiffs' private nuisance claim, which is Count 5, and cannot stand as an independent claim. In addition, they argue that Plaintiffs' negligent remediation claim, Count 8, is duplicative of Plaintiffs' negligence claim, Count 1.

The purpose of a motion to strike "is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002). Because of the "drastic nature of the remedy," however, motions to strike are "usually viewed with disfavor" and "will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." Id. at 609. Defendants cite Garlanger to support their motion to strike because the Garlanger court struck redundant 42 U.S.C. § 1983 claims and merged them with the primary § 1983 claim.

Plaintiffs' negligence and negligent site remediation claims are distinct: there is a difference between negligently causing

18

pollution to occur and negligently remediating that pollution. Defendants' motion to strike Count 8 will be denied.

But Defendants' motion will be granted as to Count 4. Plaintiffs have not shown that "quality of life damage" is a cognizable, independent claim under New Jersey law. There is no question that quality of life damages are permissible under nuisance law, but Plaintiffs have not cited any cases establishing quality of life damage as an independent claim. Plaintiffs' quality of life damage claim is therefore redundant of their nuisance claim and confusing.

Plaintiffs argue that the "degradation of Plaintiffs' quality of life is a compensable harm recognized by New Jersey tort law." (Pl. Opp'n at 11.) The Court is, by no means, suggesting that Plaintiffs could not receive damages for harm to their quality of life; the Court is simply holding that Plaintiffs' nuisance claim is the legal avenue by which they can obtain such damages.

Plaintiffs cite Ayers v. Jackson Twp., 106 N.J. 557 (1987), for the proposition that quality of life is a compensable harm recognized by New Jersey tort law because Ayers holds that "quality of life damages represent compensation for losses associated with damage to property." (Pl. Opp'n at 11 (citing Ayers at 572).) In Ayers, landowners obtained a jury verdict awarding, inter alia, quality of life damages because pollution

19

had migrated from a nearby landfill into their water wells. The
Ayers court upheld the damages award because "the quality of life
damages represent compensation for losses associated with damage
to property. . . ." Id. at 572. The Ayers court held that quality
of life damages "derived from the law of nuisance" and
"constitute[d] distinct grounds of compensation for which . . .
the person in possession is entitled to recover *in addition to*
the harm to his proprietary interests." Id. at 571-2 (emphasis in
original). Ayers notes that quality of life damages are "distinct
grounds of compensation;" there is no question that Plaintiffs
are entitled to seek this form of compensation. But the Ayers
court never held that a quality of life is an independent,
cognizable claim for relief.

The Court will strike Plaintiffs' quality of life claim and
merge Plaintiffs' pleadings regarding quality of life damages
into Count 5, which alleges private nuisance. Plaintiffs will
still be entitled to seek this form of damages, but not through
an independent legal claim.


**VIII.  DEFENDANTS' MOTION TO STAY**

Defendants sought to stay their answer to the remaining
portions of the Complaint until after the Court decided the
motions to dismiss and strike, which the Court has now resolved.

Defendants' motion to stay is now moot. Defendants shall file an answer to Plaintiffs' Complaint within 14 days.

**IX.**   CONCLUSION

Defendants' motion to dismiss is denied in part and granted in part, their motion to strike is denied in part and granted in part, and their motion to stay is dismissed as moot. The accompanying order shall be entered.


**December 7, 2012**         **s/ Jerome B. Simandle**
                        JEROME B. SIMANDLE
                        Chief U.S. District Judge